John D. PIERCE, Plaintiff,

v.

AMERICAN WATERWORKS COMPANY, INC., a corporation, and Pension Plan for Employees of American Waterworks Company, Inc. and its designated subsidiaries, Defendants.

Civ. A. No. 85–814.

United States District Court,
W.D. Pennsylvania.

April 19, 1988.

Samuel J. Pasquarelli, Jubelirer, Pass & Intrieri, P.C., Pittsburgh, Pa., for plaintiff.

Richard L. Berkman, Paul S. Kimbol, Dechert, Price & Rhoads, Philadelphia, Pa., John Edgar, Berkland, Ruslander, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

COHILL, Chief Judge.

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.,* in which the plaintiff, John D. Pierce, contends that the defendants, American Waterworks Company, Inc. and Pension Plan for Employees of American Waterworks Company, Inc., violated ERISA and the terms of the Pension Plan by denying him pension disability benefits.

Following a non-jury trial, we now make the following Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

1. The plaintiff resides in Elizabeth Borough, Allegheny County, Pennsylvania.

2. Defendant American Water Works Company, Inc. ("American Water") is a Delaware corporation having its principal of-

fices at 3908 Kennett Pike, Wilmington, Delaware, 19807.

3. Defendant Pension Plan for Employees of American Water Works Company, Inc., and Its Designated Subsidiaries (the "Plan"), is a pension plan organization created by American Water. The Plan maintains its principal offices at 3908 Kennett Pike, Wilmington, Delaware, 19807.

4. The Plan is a separate legal entity from American Water.

5. The Plan is an employee benefit plan within the meaning of ERISA. 29 U.S.C. § 1002(1) and (3).

6. Western Pennsylvania Water Company ("Western Pa. Water") is a corporation and wholly owned subsidiary of American Water.

7. Western Pa. Water is a public utility providing water service to customers in the Pennsylvania counties of Allegheny, Washington, Westmoreland, and Fayette. Western Pa. Water employs more than 100 people in said counties in the aggregate.

8. The plaintiff commenced employment with the Western Pa. Water on or about October 30, 1968.

9. The plaintiff was born July 9, 1934.

10. The plaintiff injured his back while at work for Western Pa. Water on July 20, 1981, when he pulled on a jack hammer that had become stuck in the pavement.

11. The plaintiff worked sporadically for Western Pa. Water from July 20, 1981, until October 9, 1981.

12. The plaintiff has not worked for wages for Western Pa. Water since October 9, 1981.

13. The plaintiff has not been engaged in any meaningful employment since October 9, 1981.

14. Since October 9, 1981, and continuing to the present time, the plaintiff has received workmen's compensation payments of $262.00 per week.

15. On June 23, 1983, the plaintiff applied for social security disability benefits alleging disability since August 3, 1981, due to injury to his lower back.

16. By decision dated February 29, 1984, an Administrative Law Judge (ALJ) held that the plaintiff had become disabled for purposes of the Social Security Act on November 30, 1982. The ALJ held that from November 30, 1982, the plaintiff did not possess the residual functional capacity to do sedentary work.

17. The plaintiff has been receiving social security disability benefits of $268.00 per month since December 1, 1982.

18. The plaintiff is, and at all times material hereto, has been a participant in the Plan and the plaintiff has a vested right to a retirement pension in accordance with the terms of the Plan.

19. The plaintiff is a person who would be entitled to disability retirement benefits under the terms of the Plan if he were able to meet the Plan's eligibility requirements for disability retirement benefits.

20. Pursuant to the Plan, a participant is eligible for disability retirement benefits if, "as a result of mental or physical illness or injury ... while actively employed, he is unable permanently to engage in any occupation or employment for compensation or profit."

21. The criterion for disability, that one must be "unable permanently to engage in any occupation or employment," is not defined by Plan documents.

22. The administrator of the Plan is the Retirement Plan Committee (the "Committee").

23. The plaintiff filed an application for pension disability benefits from the Plan on May 24, 1984.

24. The defendants denied plaintiff's request for disability pension benefits on October 2, 1984.

25. The plaintiff requested a review of the denial on January 2, 1985.

26. The plaintiff's request for review was granted, and the decision to deny was reviewed and affirmed by the Committee on February 7, 1985.

27. The plaintiff has not received disability pension benefits from either the Plan or American Water.

28. If the plaintiff had been granted the disability pension, the pension would be in the amount of $362.76 per month commencing July 1, 1984.

29. The plaintiff's application to the Plan consisted of a letter to the Plan requesting disability benefits with a letter dated August 23, 1983, from Dr. William Ryckman attached to it. The letter states;

I have been treating my patient, John Pierce, for the last two years because of severe osteoarthritis of the spine and herniated Disc at C5–6 and L3–4. He has been hospitalized several times for this condition, and he has also been seen by an orthopedic doctor and a neurosurgeon at my suggestion.

He is in constant severe pain because of this condition and any motion seems to make it worse. The patient has also developed diabetes which may be contributing to the pain in his back and down his leg.

After numerous tests and x-rays throughout these last two years, it is my professional opinion that John Pierce is totally disabled and chances for gainful employment of any kind are out of the question.

30. The Committee sent the plaintiff's application, along with the letter from Dr. Ryckman and the ALJ's decision, to Dr. T. Rogers Kyle to evaluate.

31. Dr. T. Rogers Kyle is the Associate Director of the Health Evaluation Center at the Hospital of the University of Pennsylvania.

32. Dr. Kyle's evaluation of the plaintiff's application consisted of a review of the plaintiff's application, the August 23, 1983, letter from Dr. Ryckman, and the disability determination of the Administrative Law Judge from the Social Security Administration.

33. Dr. Kyle did not review or request any other records relative to the plaintiff.

34. Dr. Kyle did not personally examine the plaintiff at any time.

35. By letter dated July 3, 1984, Dr. Kyle advised A.P. Tosi of the Plan of his determination regarding plaintiff's disability. The letter states;

This letter is in response to your request for information concerning the disability retirement request submitted by Mr. John D. Pierce. I spoke with Mr. Pierce's physician, Dr. W.F. Ryckman, and reviewed his medical history.

Mr. Pierce has significant osteoarthritis of the spine and documented disc disease involving both his lumber and cervical spine. He has had surgical repair of his cervical disc, but has been left with weakness and pain in his left upper extremity since surgery. He also has symptoms in his right leg from disc disease in his lumber spine. Because of his disease I think that it is unlikely that he will ever be able to engage in any occupation that requires strenuous physical activity. However, given the provisions of your disability plan, I do not feel that this patient is totally and permanently disabled and unable to engage in any occupational [sic] or employment for compensation or profit.

36. Other than the records reviewed by Dr. Kyle and Dr. Kyle's July 3, 1984, letter, no other records relative to the plaintiff were reviewed by the Plan in acting on the plaintiff's application for disability retirement benefits.

37. No member of the Committee personally spoke with Dr. Kyle concerning his opinion of the plaintiff's disability.

38. The Committee did not undertake any additional investigation of the plaintiff's condition.

39. The Committee did not ask the plaintiff to submit to a medical examination.

40. The Committee denied plaintiff's application for disability benefits because it determined that he was not totally and permanently disabled.

41. Since the plaintiff was not granted disability benefits, the plaintiff was ineligible for insurance coverage and medical expense benefits.

42. Since November 1, 1985, the plaintiff has paid for replacement medical coverage at the rate of $130.00 per month.

43. Since November 1, 1985, the plaintiff and his wife have incurred and paid $1,071.30 for prescription drugs and have incurred and paid $458.00 for medical and dental expenses.

44. If the plaintiff had been granted disability benefits, the Plan and American Water would have paid for the plaintiff's insurance expense and the plaintiff's and his wife's medical and dental expenses.

## II. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a).

■ 2. When reviewing the denial of benefits to a participant in an employee benefits plan, courts must determine whether, in denying the benefits, the plan's administrator's acted arbitrarily or capriciously or in bad faith. *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134, 148 (3rd Cir.1987); *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 187 (3rd Cir. 1984). In other words, the reviewing court must determine whether the plan trustees' decision is supported by substantial evidence. *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir.1984).

3. Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3rd Cir.1979).

4. Each of the standards of review is a separate ground for reversal. It is therefore not sufficient that a plan administrator have only some evidence to support his decision to deny benefits. *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 526–27 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987).

5. Unless the reviewing court can find that the challenged decision is not rational, it must uphold the decision of the fund administrators. *Wolf,* 728 F.2d at 187.

6. While the Third Circuit Court of Appeals has approved a more strict standard of review in those instances where the administrators of an employee benefits fund are presented with a conflict of interest when determining whether to award fund benefits, it is unnecessary for us to determine whether that standard is applicable in this case. *See Bruch,* 828 F.2d at 138.

7. The sole question before us is whether the Committee's decision to deny the plaintiff disability benefits was arbitrary and capricious; in doing so we may only consider the evidence that was before the Committee at the time it reached its decision. *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir.1985).

■ 8. At the time it reached its decision, the Committee had two credible documents before it which unequivocally concluded that the plaintiff was totally and permanently disabled. The Committee was in possession of the letter dated August 23, 1983, from Dr. Ryckman. At the time he offered his opinion, Dr. Ryckman had personally treated the plaintiff for his back condition for two years. Based on this extensive knowledge of the plaintiff's condition, Dr. Ryckman opined that the plaintiff was "totally disabled" and that his chances of ever being employed again were "out of the question."

The Committee also had before it the social security decision of an Administrative Law Judge from the Social Security Administration dated February 29, 1984. Based upon an extensive review of plaintiff's medical history and personal observations of the plaintiff at the hearing, the ALJ had found that the plaintiff was totally disabled because, as of November 30, 1982, he did not even have the residual functional capacity to do sedentary work as of November 30, 1982.

The only evidence before the Committee that plaintiff was not totally and permanently disabled was the letter from Dr. Kyle. We find that Dr. Kyle's report is not credible. First, Dr. Kyle's conclusion is based solely on his review of the letter of Dr. Ryckman and the opinion of the Administrative Law Judge; he did not review or request any other records with respect to

the plaintiff nor did he personally examine or speak with the plaintiff at any time. Second, the report is conclusory and does not set forth the factual basis upon which Dr. Kyle's opinion is founded. Third, there is no evidence in either the letter from Dr. Ryckman or the opinion of the Administrative Law Judge to support Dr. Kyle's conclusion that the plaintiff was not totally and permanently disabled.

We find it incredible that Dr. Kyle could reach such a firm and critical conclusion in light of the documents before him especially in the absence of a personal examination of the plaintiff. His opinion can reasonably be given no more weight than pure speculation. Indeed, as phrased, it sounds more like a legal opinion than a medical one.

9. In making its decision to deny plaintiff disability benefits, the Committee made no further inquiry of plaintiff's condition other than to review the letter from Dr. Ryckman, the opinion of the Administrative Law Judge, and the letter from Dr. Kyle. The Committee did not speak with Dr. Kyle to determine the basis for his opinion, did not meet with the plaintiff to personally observe his condition, nor did it schedule a personal examination of the plaintiff with a physician.

The Committee's decision to deny plaintiff disability benefits was not supported by substantial evidence. To rely solely upon the conclusory and unexplained opinion of a medical doctor who did not examine the plaintiff, and who had no evidence before him to substantiate his finding that plaintiff was not totally disabled, and to disregard credible contradictory evidence from the plaintiff's own treating physician is irrational. Dr. Kyle's report deserved little weight in the Committee's determination. For analogous reasoning in the social security context, *see Millner v. Schweiker,* 725 F.2d 243, 245 (4th Cir.1984) ("A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record."); *Browne v. Richardson,* 468 F.2d 1003, 1006 (1st Cir.1972) (The report of a doctor who did not examine plaintiff "lacks the assurance of reliability that comes … from first-hand observation and professional examination" and cannot provide substantial evidence).

10. We conclude that the Committee's decision to deny the plaintiff disability benefits under the Plan was arbitrary and capricious, and it will therefore be reversed.

11. The plaintiff is entitled to disability benefits under the Plan as of July 1, 1984, and continuing to this date in accordance with the terms of the Plan until plaintiff ceases to be entitled to Plan benefits.

12. The plaintiff is entitled to a monthly disability pension of $362.76 from and after July 1, 1984. Plaintiff is therefore entitled to $16,324.20 for the period of July 1, 1984, through March 31, 1988, representing his disability pension benefits.

13. The plaintiff is entitled to a judgment against the defendants in the amount of $1,040.00 representing the sum paid by plaintiff for medical insurance coverage costs that he would not have incurred had the Plan properly granted him disability benefits.

14. The plaintiff is entitled to a judgment against the defendants in the amount of $1,529.30 representing the sum paid by plaintiff for drugs, medicine, and dental services for himself and his wife; costs he would not have incurred had the Plan properly granted him disability benefits.

15. We have found that plaintiff's disability benefits were wrongfully withheld by the defendants since July 1, 1984. To allow the defendants to retain the interest it earned on these undistributed funds would be to approve of an unjust enrichment. *Short,* 729 F.2d at 576. The plaintiff has been denied the use of money which was his and, to be made whole, is entitled to prejudgment interest.

In accordance with our decision in *Kann v. Keystone Resources, Inc.,* 575 F.Supp. 1084, 1095 (W.D.Pa.1983), the rate of prejudgment interest in an ERISA case will be calculated in accordance with Section 1961 of Title 28, the section governing postjudgment interest. Pursuant to that section, the rate for postjudgment interest is

to be calculated "at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment." 28 U.S.C. § 1961(a).

Due to the fluctuation of the postjudgment rate between July 1, 1984, the date on which plaintiff would have started receiving pension benefits had he been properly granted them, and the date of this decision, we find that the prudent and fair course is to apply the average postjudgment rate for that period. The rates applicable for this period are set forth in monthly memoranda addressed to all United States Clerks of Courts from Dewey R. Heising, Chief of the Division of Financial Management for the Administrative Office of the United States Courts. We will take judicial notice that the average of the monthly postjudgment interest rates for July 1, 1984, through March 31, 1988, is 7.75%.

We, therefore, will direct the Clerk of Court for the Western District of Pennsylvania to compute the prejudgment interest by applying a rate of 7.75% on the total losses sustained by the plaintiff as a result of the defendant's wrongful withholding of his disability benefits, i.e. $18,893.50.

■ 16. The plaintiff has requested that he be awarded attorney's fees. Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Five policy factors must be considered before a court may award such fees in an ERISA case: (1) the offending parties' bad faith or culpability; (2) the ability of the offending parties to pay the fees; (3) the deterrent effect such an award would have on the offending parties; (4) the benefit conferred upon the pension plan members as a whole; and (5) the relative merits of the parties' position. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3rd Cir. 1983).

■ In applying these factors to this case, we believe that an award of such fees is warranted.

In considering the first factor, we believe that the committee made an arbitrary decision to deny plaintiff disability benefits based on factors extraneous to the evidence before it. As noted above, the Committee's reliance on the unsupported conclusory opinion of a non-examining, non-treating physician, which was contradicted by the plaintiff's own treating physician and the social security opinion, was irrational. In response to the defendant's claim that the Committee made its own independent determination regarding the plaintiff's disability, we note that no member of the Committee was a medical doctor. In fact, the Committee did not even meet with the plaintiff or request that he undergo a physician examination.

The arbitrary and capricious standard of review is designed to assure that disability determinations are not made on the unfettered whim of fund administrators. The only reasonable interpretation of the facts surrounding the Committee's decision is that its members must have based their decision on some external consideration irrelevant to the merits of plaintiff's disability claim. We find that the defendant's irresponsible consideration of plaintiff's application warrants a fees award.

In regards to the defendant's ability to pay, Richard Strahlman, a member of the Committee indicated that the Plan was overfunded. We believe that a reasonable award of fees will not overly burden the defendants. The third and fourth factors may be considered jointly. An award of fees will cause the Committee to review pension disability applications with the care demanded by their positions of trust. Furthermore, this will act as a deterrent and will benefit other members of the Plan who seek to obtain benefits in the future. Lastly, we believe that the defendants' claim that the Committee's decision was not arbitrary and capricious, was, in itself, specious.

We, therefore, conclude that the plaintiff is entitled to reasonable attorney's fees and

expenses, and we will direct plaintiff's counsel to submit an affidavit showing a breakdown of fees and expenses incurred in this lawsuit.

## III. CONCLUSION

For the reasons stated above, final judgment will be entered in favor of plaintiff John D. Pierce and against defendant American Waterworks Company, Inc. and defendant Pension Plan for Employees of American Waterworks Company, Inc. in accordance with this Opinion.

An appropriate order will issue.

### ORDER

AND NOW, to wit, this 19th day of April, 1988, in accordance with the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED and DECREED that judgment be and hereby is entered for the plaintiff and against the defendants in the amount of $18,893.50.

It is further ORDERED, ADJUDGED and DECREED that:

1). The Clerk of Court of the Western District of Pennsylvania be and hereby is directed to compute prejudgment interest on $18,893.50 at a rate of 7.75% to be computed from July 1, 1984.

2). Plaintiff's counsel must submit to this court a statement of attorney's fees and expenses no later than May 13, 1988.