**Ervin B. MADDEN, Plaintiff–Appellant,**

v.

**ITT LONG TERM DISABILITY PLAN FOR SALARIED EMPLOYEES; Federal Electric Corporation, Defendants–Appellees.**

**No. 89–55505.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1990.

Decided Sept. 17, 1990.

Steven Roseman, Long Beach, Cal., for plaintiff-appellant.

John L. Viola, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendants-appellees.

Before ALARCON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

BRUNETTI, Circuit Judge:

Ervin Madden ("Madden") filed suit against his employer, Federal Electric Corp. ("Federal"), and its long-term disability plan, ITT Long Term Disability Plan for Salaried Employees ("the Plan"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover benefits allegedly due him under the terms of the Plan, arising out of the termination of Madden's long-term Plan disability benefits by Metropolitan Life Insurance Co. ("Metropolitan"), ITT's delegate, and seeking contractual damages, injunctive relief, and attorney's fees.

A. *Factual and Procedural Background*

Madden was employed by Federal for nine years as a management employee. He has extensive education and experience in communications and electronics, including supervisory positions. On February 13, 1983 Madden suffered a spinal injury that resulted in his inability to return to work at Federal. Because of this injury, Madden applied for long-term disability benefits from the Plan.

The Plan provides two standards of disability qualifications:

1. During the first year in which you receive LTD [Long Term Disability] benefits you are considered totally disabled if you are unable to perform the regular duties of your ITT job and are not employed elsewhere.

2. After the first year, total disability means you are unable to engage in *any* occupation for which you are qualified, based on your training, education, or experience.

(emphasis in original).

From the period September 1983 through August 1985, Madden's own chosen physician, Dr. Edward A. Smith, a board certified neurosurgeon, periodically informed The Equitable Life Assurance Society of the United States ("Equitable"), to whom ITT had delegated its authority to administer the Plan, that Madden was disabled under both definitions of total disability. Accordingly, Madden received Plan benefits for that period.

In August 1985 Dr. Smith informed Equitable that although Madden was still totally disabled from his regular work, he was not totally disabled from any other occupation. In November 1985 Dr. Smith again indicated that Madden was not totally disabled from work, other than his own former job at Federal. Dr. Smith believed that Madden should be able to do "semisedentary work," if the job allowed him to stand up after every thirty minutes of sitting and did not require lifting objects in excess of ten pounds.[1] However, Madden continued to receive Plan benefits.

Meanwhile, in October 1985 the Social Security Administration, reversing its earlier position, found that Madden had satisfied its requirements for receiving social security disability benefits commencing February 14, 1983 and awarded him retroactive benefits. On March 20, 1986 Madden phoned Metropolitan, who had replaced Equitable as ITT's delegate on January 1, 1986, and reported this retroactive benefit award.

In April 1986 Metropolitan reviewed Madden's file and determined, based on Dr. Smith's previous medical findings, the only current medical information on file, and Madden's training, education, and experience, that Madden was no longer totally disabled as defined by the Plan. Metropolitan thus informed him of the termination of his Plan benefits effective June 1, 1986. Metropolitan also explained the review pro-

---

**1.** His former position at Federal did in fact allow such freedom of movement and lack of heavy lifting.

cedure for such denials of benefit claims: "When requesting a review, please state the reason you believe the claim was improperly denied, and submit any data, questions or comments you deem appropriate."

Madden requested that Metropolitan review its decision to terminate his benefits, alleging that Dr. Smith had not conveyed all relevant information; Metropolitan initiated such a review. Pursuant to this review, in August 1986 Dr. Smith contacted Metropolitan, again indicating that based upon his March 1986 examination, while Madden was limited to "semi-sedentary" work, he was not disabled for any occupation.[2] Specifically, while he was limited in his abilities to bend, lift, and stoop, he suffered no limitations regarding activities such as operating electrical equipment, concentrating visual attention, grasping, handling, and finger dexterity. Based on Dr. Smith's medical findings Metropolitan affirmed its decision to terminate Madden's Plan benefits, again requesting that Madden provide any medical information that would support his benefit claim.

Madden responded by filing a complaint with the Office of the Washington State Insurance Commissioner. In response to this complaint, in January 1987 Metropolitan conducted a second review, reaffirming its decision to terminate Madden's Plan benefits, based upon Dr. Smith's medical findings and Madden's training, education, and experience.

In February 1987 Madden requested yet another review, at which time Metropolitan had an independent outside agency, Crawford Risk Management Services ("Crawford"), perform a vocational assessment. Crawford reviewed Dr. Smith's medical findings, Madden's age, and his education, training, and experience. Crawford determined that Madden retained functional capacity to perform work within his capabilities, listing five job titles he should be capable of performing. Based on Dr. Smith's medical findings and Crawford's assessment, Metropolitan again reaffirmed its decision to terminate Madden's Plan benefits. At no time during these three reviews did Madden submit any additional medical evidence supporting his benefit claim.[3]

In April 1988 Madden filed suit against the Plan and Federal pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B),[4] to recover benefits allegedly due him under the terms of the Plan, seeking contractual damages, injunctive relief, and attorney's fees. The district court granted defendants' motion for summary judgment, ruling that Metropolitan's decision to terminate Madden's Plan benefits was reviewable under the "arbitrary and capricious" standard of review. The court found that Metropolitan's

---

2. Dr. Smith's letter indicated that "full-time semi-sedentary work would place too much stress on [Madden's] back." However, Dr. Smith testified at his deposition that his secretary erred and that the form should have indicated that full-time *sedentary* work, not semi-sedentary work, would place too much stress on Madden's back.

3. In his first request for review of Metropolitan's decision to terminate his Plan benefits, Madden referred to an alleged evaluation by the UCLA Medical Center and an alleged examination by Dr. Jean Michaels, an orthopedic specialist in Lompoc, California. Madden alleges that in May 1986 he mailed a copy of the social security award and Dr. Michaels' medical examination to Metropolitan. Beyond this reference and allegation, however, there is no evidence in the record supporting such an alleged mailing, the alleged examination by Dr. Michaels, or the alleged evaluation by UCLA Medical Center. Nor is there any evidence in the record showing Metropolitan's receipt of the alleged medical reports; Metropolitan's records show only a logged phone call from Madden informing Metropolitan of the social security benefit award. Moreover, neither alleged medical reports were submitted to the district court.

Regarding these alleged reports, the district court held that while perhaps Madden has some reports by other doctors somewhere, and that perhaps they might support his claim, they were irrelevant, since he did not get them to Metropolitan, despite Metropolitan's many requests for further medical information. We agree.

4. Section 1132(a) provides in part:

A civil action may be brought—
(1) by a participant or beneficiary—
  (A) ...
  (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

ERISA, 29 U.S.C. § 1132(a)(1)(B) (1988).

decision was not arbitrary and capricious, was supported by substantial evidence, was not made in bad faith, and was not erroneous as a matter of law, and that even if the decision were subject to *de novo* review, Metropolitan did not violate its fiduciary duty. The court also ruled that the Plan was entitled to the retroactive social security benefits Madden received for the period he also received Plan benefits. Lastly, the court ruled that Federal was not a proper party, because ERISA only permits suits for recovery of benefits against the employee benefit plan itself, not the employer. The court denied Madden's cross-motion for summary judgment, which sought ERISA disability benefits on the theory that he was eligible because he received a social security award.

Madden appeals, contending that (1) Metropolitan's decision to terminate his Plan benefits should be reviewed under the *de novo* standard of review; (2) Metropolitan acted improperly in terminating his Plan benefits; (3) there are disputed issues of material facts; (4) he is entitled to summary judgment because he succeeded in his social security disability claim; (5) the Plan is not entitled to any of his retroactive social security benefits award; and (6) Federal is a proper party. Madden also requests attorney's fees on the appeal. We affirm.

## B. *Standard of Review*

■■ We review a grant of summary judgment *de novo*. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

Madden contends that Metropolitan's decision to terminate his Plan benefits should be reviewed under the *de novo* standard of review. Madden contends that even

though ITT's decisions under the Plan are entitled to the "arbitrary and capricious" standard of review because ITT is the Plan's named fiduciary, Metropolitan's decision to terminate his Plan benefits is not, because Metropolitan is merely ITT's delegate and not an ERISA fiduciary.

Under ERISA "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." ERISA, 29 U.S.C. § 1102(a)(1) (1988).

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 953–57, 103 L.Ed.2d 80 (1989), the Supreme Court closely analogized the law under ERISA to trust law and ruled on the applicable judicial standard of review of ERISA claims: "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956. Where such authority is given, under trust principles a "deferential standard of review" is appropriate. *Id.* 109 S.Ct. at 954.

■■ Under ERISA, a named fiduciary may delegate its fiduciary responsibilities:

The instrument under which a plan is maintained may expressly provide for procedures ... (B) for *named fiduciaries to designate persons* other than named fiduciaries *to carry out fiduciary responsibilities* (other than trustee responsibilities) under the plan.

ERISA, 29 U.S.C. § 1105(c)(1) (1988) (emphasis added).

■■ In accordance with the logic and reasoning of *Firestone*, we hold that where (1) the ERISA plan expressly gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan and (2) pursuant to ERISA, 29 U.S.C. § 1105(c)(1) (1988), a named fiduciary properly desig-

nates another fiduciary, delegating its discretionary authority, the "arbitrary and capricious" standard of review for ERISA claims brought under § 1132(a)(1)(B) applies to the designated ERISA-fiduciary as well as to the named fiduciary. *Accord Bali v. Blue Cross & Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir.1989) (where plan gives administrator discretionary authority regarding document requests and insurer acts as plan administrator, discretionary standard of review applied to insurer's document requests); *see Firestone,* 109 S.Ct. at 956; *see also Filary v. General Am. Life Ins. Co.,* 711 F.Supp. 528, 530 (D.Ariz.1989) (insurer's benefit claim denial, based on discretionary authority to construe plan, reviewed under arbitrary and capricious standard).

■ In the present case the Plan named ITT as Plan administrator and fiduciary and expressly authorized ITT's Board of Directors to appoint a Long–Term Disability ("LTD") Administration Committee to have "responsibility for carrying out all phases of the Administration of the Plan." The Plan expressly gives the Committee discretionary authority to determine eligibility for benefits and to construe the terms of the plan:

> The LTD Administration Committee shall have *the exclusive right ... to interpret the Plan and to decide any and all matters arising hereunder,* including the right to remedy possible ambiguities, equities, inconsistencies, or omissions.... [A]ll interpretations and decisions of the LTD Administration Committee or the [ITT] Board of Directors with respect to any matter hereunder shall be final, conclusive and binding on all parties affected thereby.

(emphasis added). *See also Firestone,* 109 S.Ct. at 956.

The Plan, as permitted by § 1105(c)(1), also expressly authorizes the LTD Administration Committee to designate another person as fiduciary for the administration of the Plan:

> The LTD Administration Committee *may delegate its authority with respect to the denial, granting, and administration of claims to a claim administrator,* which may be an insurance company or other appropriate named fiduciary and may enter into a Claims Administration Agreement with such claim administrator for the handling and determination of claims including, but not limited to, the granting or denial of claims and any appeals therefrom.

(emphasis added). *See also* ERISA, 29 U.S.C. § 1102(a)(1) (1988).

Pursuant to this provision ITT designated Metropolitan as Plan fiduciary and administrator pursuant to a Claims Administration Agreement effective January 1, 1986:

> Upon receipt of a claim, *Metropolitan shall review the claim* including evaluation by Metropolitan's consultants when required, and determine whether it has been properly filed and the amount, if any, which is due and payable with respect thereto. In making benefit payments, *Metropolitan will determine the validity of each claim presented* and will, as necessary, make appropriate investigations within the time prescribed for processing of claims....
>
> .    .    .    .    .
>
> If benefits are to be wholly or partially denied, Metropolitan shall notify the claimant within a reasonable period of time.... *Metropolitan will have fiduciary responsibility for provision of full and fair review of claim denials....* Final determination of payment or denial of appealed claims will be made following appropriate analysis and review. ITT will promptly submit to Metropolitan any request it receives for a review of a claim for benefits which has been denied, in order that Metropolitan may provide a full and fair review of the claim.

(emphasis added).[5] However, under the Claims Administration Agreement, ITT did

---

**5.** Madden's claim that Metropolitan is not an ERISA fiduciary and thus is not entitled to any

deference is clearly incorrect; the Claims Ad-

retain ultimate discretion to construe the terms of the Plan:

> [I]n the event ITT determines that Metropolitan has misinterpreted the Plan and so informs Metropolitan in writing of such appropriate interpretation, and such interpretation is deemed not unreasonable and not inconsistent with the terms of the Plan to Metropolitan, all claims processed after delivery of such writing to Metropolitan shall be administered in accordance with the interpretation of ITT.

Because the Plan gives the LTD Administration Committee discretionary authority and the Committee has properly designated Metropolitan as ERISA fiduciary, we review Metropolitan's decision to terminate Madden's Plan benefits under the more deferential "arbitrary and capricious" standard. *See Firestone,* 109 S.Ct. at 956; ERISA, 29 U.S.C. § 1105(c)(1) (1988).

### C. *Termination of Plan Benefits*

■ Madden contends that Metropolitan improperly terminated his Plan benefits, citing Metropolitan's failure to consider his social security award, *see Pierce v. American Waterworks Co.,* 683 F.Supp. 996, 1000 (W.D.Pa.1988) (denial of benefits reversed as arbitrary and capricious in part because of the claimant's receipt of a social security award), and its reliance upon medical reports written in August and November of 1985, eight and five months before Metropolitan's decision to terminate his Plan benefits.

In accordance with our above holding, we review Metropolitan's decision to terminate Madden's Plan benefits under the "arbitrary and capricious" standard. The record shows that Metropolitan's decision to terminate Madden's Plan benefits was based upon the most recent medical information in its files, provided by his own physician, Dr. Smith, which specifically noted that Madden was not totally disabled from work, and Federal's report of Madden's educational background and work experience. Although Metropolitan did not consider Madden's social security award,

unlike *Pierce,* where the medical evidence contradicted the plan's decision to terminate plan benefits, in the present case all medical evidence submitted to Metropolitan and in the record shows that as of June 1, 1986 Madden was able to engage in various occupations and thus failed to meet the Plan's definition of "totally disabled." We therefore conclude that Metropolitan's decision to terminate Madden's Plan benefits was not arbitrary or capricious and was supported by substantial evidence.

### D. *Disputed Material Facts*

Madden next contends that the meaning of the phrase "total disability," the relevance of his social security award, the adequacy of Metropolitan's notification regarding the provision of information regarding perfection of his benefit claim, and the objectivity, independence, and fairness of Metropolitan's appeal procedure are all disputed material facts.

■ Madden first argues that the Plan's definition of "total disability," which requires that he be "unable to engage in *any* occupation" should not be given "an absolute and literal interpretation." *See Helms v. Monsanto Co.,* 728 F.2d 1416, 1420 (11th Cir.1984) (rejecting "an absolute and literal interpretation" of the term "totally and permanently disabled").

In *Helms* the court defined "totally and permanently disabled" as a "physical inability to follow any occupation from which [one] could earn a reasonably substantial income rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability." *Id.* at 1421–22. However, in the present case the Plan defines "totally disabled" as "unable to engage in *any* occupation for which [he is] qualified, based on [his] training, education, or experience." (emphasis in original). The Plan's definition, therefore, which recognizes a claimant's personal training, education, and experience, favors a claimant far more than Madden's proposed *Helms* definition, which merely focuses on the likelihood of "a reasonably

---

ministration Agreement expressly provides that

Metropolitan has fiduciary responsibility.

substantial income" that "approach[es] the dignity of a livelihood." *Id.* at 1421. Therefore, the definition of "total disability" is not a disputed material fact.[6]

Madden next argues that Metropolitan should have considered his social security benefits award in its decision to terminate his Plan benefits. *See Pierce,* 683 F.Supp. at 1000–01. However, as discussed above, the *Pierce* reasoning does not apply in the present case, and we find that Metropolitan's decision to terminate Madden's Plan benefits was not arbitrary or capricious and was supported by substantial evidence. Therefore, the relevance of Madden's social security benefit award is not a disputed material fact.

▮ Madden next argues that Metropolitan did not adequately notify him regarding the provision of further medical information to support his benefit claim. Under ERISA, adequate notice in writing must be provided to any participant whose benefit claim has been denied, which must set forth the specific reasons for the denial. ERISA, 29 U.S.C. § 1133(1) (1988). The record shows that Metropolitan promptly notified Madden of its decision to terminate his Plan benefits, indicating that his benefit claim was denied because he was no longer "totally disabled" under the Plan. The record also shows that in this notice Metropolitan instructed Madden as to the proper method of appeal, specifically requesting the submission of any additional medical reports that would support his claim. Furthermore, the record shows that in each of Madden's three appeals, Metropolitan repeated its request for any medical information that he wished to submit; he submitted none. We conclude that the adequacy of Metropolitan's notice to Madden regarding the provision of further medical information to support his benefit claim is not a disputed material fact.

▮ Lastly, Madden argues that Metropolitan's appeal procedure is not objective, independent, or fair and is therefore biased. Under ERISA a participant whose benefit claim has been denied must be afforded a reasonable opportunity for a full and fair review by the fiduciary of the decision denying the benefit claim. ERISA, 29 U.S.C. § 1133(2) (1988). The record shows that Metropolitan conducted three separate, independent reviews by persons not involved in the original decision to terminate Madden's Plan benefits. As noted above, the record also shows that Madden had every opportunity to present medical evidence supporting his benefit claim, although he declined to do so. The record further shows that Metropolitan brought in Crawford, an independent outside service, to assess Madden's benefit claim during the third review. We conclude that the objectivity, independence, fairness, and impartiality of Metropolitan's appeal procedure is not a disputed material fact.

### E. *Madden's Cross–Motion*

▮ Madden next contends that he is eligible for ERISA disability benefits because he received a social security disability award. *See Pierce,* 683 F.Supp. at 1000. As discussed in detail above, the *Pierce* reasoning does not apply in the present case, and we find that Metropolitan's decision to terminate Madden's Plan benefits was not arbitrary or capricious and was supported by substantial evidence. Moreover, if Madden's argument were correct, ERISA fiduciaries would be stripped of all administrative discretion, as they would be required to follow the Department of Health and Human Services' decisions regarding social security benefits, even where the Plan determines benefits under different standards or the medical evidence presented is to the contrary. Therefore, the district court properly denied his cross-motion for summary judgment.

---

**6.** Metropolitan's use of the Plan definition was clearly proper, because as an ERISA fiduciary, Metropolitan was required to apply the terms of the Plan. *See* ERISA, 29 U.S.C. § 1104(a)(1)(D) (1988).

  Moreover, we note that there is substantial evidence in the record that shows Madden

would not be "totally disabled" under the *Helms* definition, as the record shows that he was capable of following many occupations from which he could earn a "reasonably substantial income." *See Helms,* 728 F.2d at 1421.

**F. *Retroactive Social Security Benefit***

█ Madden next contends that the Plan is not entitled to any of his retroactive social security award because such an entitlement constitutes a loss of his benefits. Under ERISA a summary plan description must list and explain the circumstances that may result in disqualification, ineligibility, or denial or loss of benefits. ERISA, 29 U.S.C. § 1022(b) (1988). However, courts have upheld the recovery of retroactive social security awards by ERISA plans where such plans provide for the reduction of benefits by such awards, even when the Plan does not specifically provide for such retroactive reimbursement. *See, e.g., Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. 619, 623–24 (D.Me.1987), *aff'd,* 849 F.2d 1534 (1st Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 533 (1988) (failure to provide for recoupment of retroactive payments does not prevent such reimbursement where clear language of plan anticipates reductions in benefits upon receipt of social security award).

█ In the present case the Summary Plan Description ("SPD") specifically provides that the Plan's long-term disability benefits "may include disability benefits payable to you from any of the following sources: Workers' Compensation, *Social Security* and the Railroad Retirement Board [and] Other Plans." (Emphasis added) The SPD further provides that only benefits from the listed sources are included in the Plan benefit, and that once a participant begins receiving a long-term disability benefit, it will not be reduced by any increase in benefits the participant may be entitled to from other sources. The SPD also gives a specific example of the application of these provisions, showing a claimant entitled to 55% of his monthly salary prior to the disability, minus social security benefits payable to the claimant, not including benefits payable to the claimant's family.

The SPD properly notified Madden as to the reduction of his Plan benefits by any social security disability benefits. *See* ERISA, 29 U.S.C. § 1022(b) (1988). Furthermore, there is no record evidence that Madden was unaware of these provisions. Because the SPD provides for the reduction of Plan benefits by social security disability awards, the Plan is entitled to the retroactive social security benefits Madden received for the period he also received Plan benefits.

**G. *Dismissal of Federal***

█ Lastly, Madden contends that Federal is a proper party in this matter because Federal allegedly canceled multiple insurance policies of his after Metropolitan terminated his Plan benefits. This Circuit has held that "[t]he only causes of action [a plaintiff] has are those provided by ERISA. ERISA permits suits to recover benefits only against the Plan as an entity, ... and suits for breach of fiduciary duty only against the fiduciary." *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 (9th Cir.1985) (citations omitted). Madden's contention that he alleged non-ERISA claims against Federal is not borne out and, in any event, is mooted by our discussion on the ERISA issues. Therefore, Federal is not a proper party.

**H. *Conclusion***

We affirm the district court's summary judgment ruling: (1) Metropolitan's decision to terminate Madden's Plan benefits was not arbitrary or capricious and was supported by substantial evidence; (2) there are no disputed material facts; (3) the Plan is entitled to the retroactive social security benefits Madden received for the period he also received Plan benefits; and (4) Federal is not a proper party. Because we find in favor of defendants on the merits, we deny Madden's request for attorney's fees pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

AFFIRMED.