**Karlis BOMIS, Plaintiff/Counter–
Defendant,**

v.

**METROPOLITAN LIFE INSURANCE
CO., Defendant/Counter–Plaintiff.**

No. 96–CV–71259–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 28, 1997.

---

Mary F. Clinton, Hurbis & Clinton, PC, Ann Arbor, MI, for Plaintiff.

David M. Davis, Hardy, Lewis & Page, PC, Birmingham, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### I. FACTS:

This matter is before the Court on the parties' Cross–Motions for Summary Judgment. Plaintiff Karlis Bomis filed the instant suit against Defendant Metropolitan Life Insurance Company ("MetLife") alleging that Defendant failed to pay long term disability insurance benefits. Defendant filed a counterclaim alleging it was entitled to reimbursement because it overpaid Plaintiff's benefit. Defendant states in its motion that the counterclaim may be dismissed because Plaintiff has reimbursed MetLife.

Plaintiff originally filed the action in the Washtenaw County Circuit Court. Defendant removed the matter to this Court asserting that the Court had exclusive jurisdiction under the Employment Retirement Income Security Act of 1974 ("ERISA"). Plaintiff in his Complaint cited to Section 4301 of ERISA. 29 U.S.C. § 1451, as a basis for his Complaint. Defendant asserts that Section 1451 is not applicable since that section applies to a plan participant who is adversely affected by the decision of a plan administrator of a multiemployer plan or trade union which represents such a plan. Here, the plan at issue, the Burrows Plan, is not a multiemployer plan and no trade unions are involved. Defendant asserts that the appropriate section for Plaintiffs claim is found in Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). This section provides that a participant in a plan may bring a civil action to recover benefits due to him under the terms of the plan.

Plaintiff was employed by Burrows Company as a medical supply sales representative. On January 21, 1992, Plaintiff fell at work and injured his right knee. On January 28, 1992, Plaintiff went to see Dr. Thomas S. Woo. Plaintiff was fitted with a knee immobilizer and was advised by Dr. Woo to wear it continuously until his next appointment in ten days. Plaintiff took the knee brace off before the ten days elapsed. By February 7, 1992, the time Dr. Woo saw Plaintiff again, Plaintiff's extensor mechanism was completely out. On February 10, 1992, Dr. Woo performed surgery on Plaintiffs right knee. Plaintiff subsequently commenced a program of physical therapy. By July 15, 1992. Plaintiff was fully ambulatory and driving independently, according to a letter to Dr. Arthur Tai from Dr. Woo. While Plaintiff was convalescing, he maintained telephone contact with his clients from his home.

From January 22, 1992 to December 7, 1993. Plaintiff received Workers' Compensation benefits. Plaintiff applied for social security benefits and was found to be eligible effective January 19, 1993. Plaintiff asserts

that his medical treatment has been ongoing and is expected to continue indefinitely.

On April 18, 1994, over two years after the incident, Plaintiff applied for benefits under the Burrows Plan. After receiving Plaintiff's medical records and other information from various doctors and other sources, MetLife referred Plaintiff's case to an Independent Medical Review Board consisting of independent doctors. The Review Board examined the information concerning Plaintiff's medical condition, compared it to his job duties and determined that Plaintiff was not disabled as a sales representative after July 1992. MetLife sent the Review Board's findings to Plaintiff's physicians, Drs. Tai and Thomas S. O'Keefe for their comments. Dr. O'Keefe did not respond to MetLife's letter. Dr. Tai responded, disagreeing with a number of the Review Board's findings. However, Dr. Tai did not provide any additional medical information to substantiate his differing opinions.

MetLife reviewed the Board's findings and Dr. Tai's comments. MetLife determined in a letter to Plaintiff dated December 27, 1994 that Plaintiff was disabled from his salesman job through July 1992. MetLife paid Plaintiff benefits during this period, reduced by the Workers' Compensation benefits Plaintiff was receiving at that time. On February 14, 1995, Plaintiff, through his attorney, requested a review of MetLife's decision. Plaintiff's attorney attached a copy of Plaintiff's Award of Social Security Disability Benefits. Plaintiff contended that because the Social Security Administration found Plaintiff disabled, MetLife should be bound by this finding.

MetLife then sought information from Dr. Luke Kim, the doctor who found Plaintiff 'totally disabled' in Plaintiff's Social Security benefit application. Plaintiff forwarded Dr. Kim's report to MetLife. MetLife also sought information about the termination of Plaintiff's Workers' Compensation. MetLife forwarded Dr. Kim's April 4, 1994 report, along with Dr. Tai's report to the Review Board. The Review Board reexamined Plaintiff's claim and concluded that Plaintiff was unable to perform his duties as a sales representative from the date of the injury through December 1993. In a report dated April 21, 1995, the Review Board concluded that Plaintiff had sufficient strength to drive an automobile for several hours at a time. The Review Board extended the disability period through December 31, 1993 because of the possibility that disuse in the knee was present in mid-1993. The Review Board noted that the minimal atrophy present in early 1994 indicated that substantial recovery occurred.

MetLife obtained the decision terminating Plaintiff's Workers' Compensation benefits on August 15, 1995. The Workers' Compensation Board Magistrate found that by October 8, 1992, Plaintiff's strength in the quadriceps muscle was excellent and that the problem appeared to be limited flexion of the right knee. Dr. O'Keefe, Plaintiff's own physician, testified at the hearing that loss of knee flexion creates problems for people but that it is a very limited disability with respect to the ability to return to work. Dr. E. Michael Krieg, a doctor who examined Plaintiff on June 14, 1993, testified that Plaintiff could return to full active employment as a medical supply salesman. The Workers' Compensation Board Magistrate found that the physical demands of Plaintiff's job as a medical supply sales representative were minimal. The Magistrate found that Plaintiff had recovered sufficiently to resume his employment as a medical supply salesperson. Plaintiff was awarded benefits from January 22, 1992 through December 3, 1993. The decision was affirmed by the Workers' Compensation Appellate Commission.

MetLife reviewed the Independent Review Board amended opinion, the medical reports, including Dr. Kim's report, and the Magistrate's findings. The Board found that Plaintiff was entitled to benefits up to December 31, 1993. Plaintiff was notified of this decision in an August 16, 1995 letter. Plaintiff received social security benefits, workers' compensation benefits, along with MetLife's award. Plaintiff received an overpayment of $87.63. Plaintiff appealed MetLife's decision but did not provide additional medical evidence to support the appeal. On October 26, 1995, MetLife notified Plaintiff that there was no basis to modify its decision. Plaintiff filed the instant Complaint on January 24,

1996. The parties have now filed cross-motions for summary judgment.

## II. *ANALYSIS:*

### A. *Standard of Review.*

■ Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1463 (E.D.Mich.1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true. *Janan v. Trammell,* 785 F.2d 557, 558 (6th Cir.1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. A court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### B. *Administrative Remedies.*

ERISA comprehensively regulates employee benefit plans. 29 U.S.C. §§ 1002, 1003. ERISA regulates benefit plans to ensure the uniformity of decision which will assist plan administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws. *Pilot Life Ins. Co.,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987), ERISA requires that employee benefit plans provide administrative remedies for those seeking to appeal a denial of benefits. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1. ERISA does not explicitly require exhaustion of administrative remedies. However. courts, including the Sixth Circuit, have held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991); *Makar v. Health Care Corp. of Mid–Atlantic,* 872 F.2d 80, 82–83 (4th Cir. 1989); *Costantino v. TRW, Inc.,* 13 F.3d 969, 974 (6th Cir.1994). The rationale behind finding an exhaustion requirement in, ERISA is the "strong federal interest encouraging private resolution of ERISA disputes." *Makar,* 872 F.2d at 82; *Metropolitan Life Ins. Co. v. Person,* 805 F.Supp. 1411, 1419 (E.D.Mich.1992). Here, there is no dispute that Plaintiff has exhausted his administrative remedies.

### C. *Statute of Limitations.*

■ Defendant asserts that Plaintiff's Complaint is barred by the statute of limitations under the Plan. Plaintiff asserts that the limitation period should be tolled during

the time Plaintiff appealed Defendant's decision.

The Burrows Plan provides that any employee claiming benefits must file a written notice of claim with MetLife during the Elimination Period. The Elimination Period under the Plan is 90 days from the injury date. (Ex. E of Defendant's brief, p. 18). Here, Plaintiff was injured on January 21, 1992. The Elimination Period in his case would end on or about April 20, 1992. The Plan further provides that proof of claim must be given to MetLife not later than 90 days following the end of the Elimination Period. In Plaintiff's case, he was required to give proof of claim no later than July 20, 1992. The Plan provides that a late notice of proof may be submitted so long as it is given as soon as possible. MetLife received Plaintiff's proof of claim on July 18, 1994, almost two years after Plaintiff was to file a proof of claim under the Plan. Despite the late filing of Plaintiff's proof of claim, MetLife reviewed his claim. Plaintiff does not give any reason for the two year delay, other than stating at oral argument that because Plaintiff was already receiving benefits from other sources, no substantial benefits would be due Plaintiff from MetLife.

The Plan further provides a time limitation in filing suits. (Ex. E to Defendant's brief, p. 18). The Plan states: "No law suit may be started to obtain benefits until 60 days after proof is given." The Plan goes on to state: "No law suit may be started *more than 3 years after the time proof must be given.*" Under the Plan, the latest Plaintiff should have given the proof of claim was on July 20, 1992. Three years from July 20, 1992, is July 20, 1995. Plaintiff did not file the instant suit until January 26, 1996, well beyond the three year period allowed under the Plan.

Reasonable limitation periods specified in employee benefit plans and group insurance certificates have been upheld. *Roberson v. Metropolitan Life Ins. Co.,* 682 F.Supp. 907 (E.D.Mich.1988). In *Roberson,* the insurance policy at issue contained an explicit 3–year statute of limitations provision, similar to that found in the instant case. The plaintiff in Roberson cited to *Lewis v. Detroit Auto.*

*Inter–Insurance Exchange,* 426 Mich. 93, 393 N.W.2d 167 (1986) for the proposition that the statute of limitations is "tolled" from the date a claimant makes a claim for benefits, so long as the claimant pursues his claim with "reasonable diligence." The district court rejected plaintiff's argument that the statute of limitations was "tolled" when plaintiff made his claim for benefits finding that the insurance company acted in good faith by expressing a willingness to accept further proof of disability during the pendency of Plaintiff's grievance, despite denying Plaintiff's claim for disability on three different occasions. *Roberson,* 682 F.Supp. at 911( ).

Here, Plaintiff's argument regarding the statute of limitations issue is similar to that in *Roberson.* Plaintiff filed his suit after the three year limitation period under the Burrows Plan. Plaintiff has given no explanation as to why he filed his claim with MetLife two years late, other than he felt that no substantial benefits would be due to him because he was already receiving benefits from other sources. The review and appeal process in the instant case, from the time Plaintiff filed his claim with Defendant in April 1994, ending with the appeal decision in October 1995, took approximately 18 months. Had Plaintiff timely filed his application, rather than filing it two years late, sufficient time would have been left for Plaintiff to file a timely action before this Court. It was not Defendant's actions that made the review and appeal process go beyond the three year statute of limitation but Plaintiff's late filing of two years that delayed his application. Defendant was diligent in processing Plaintiff's late application. Defendant allowed Plaintiff to submit additional documents after Defendant initially awarded benefits to Plaintiff from the date of his injury through July 1992. The Independent Review Board reviewed Plaintiff's claim a second time at the request of Defendant finding Plaintiff disabled through December 31, 1993. MetLife thereafter extended benefits to Plaintiff through December 31, 1993.

The Court finds that Plaintiff has not shown that he was "diligent" in pursuing his claim. It was Plaintiff who filed his application two years after the deadline under the

Plan. Plaintiff now wants the benefit of tolling the three year statute of limitation even though he failed to file his application on a timely basis. Plaintiff should not now be able to take advantage of the two year delay. Plaintiff's Complaint is barred by the three-year statute of limitation under the Plan.

### D. *ERISA preempts state law.*

█ Plaintiff claims that Defendant is estopped, under a promissory estoppel theory, from denying Plaintiff benefits. Plaintiff relies on *Edwards v. State Farm Automobile Insurance Co.,* 851 F.2d 134 (6th Cir.1988) for his argument that he has a promissory estoppel claim. In *Edwards,* the Sixth Circuit considered a claim based on provisions of a summary plan description which conflicted with the actual plan language. The Sixth Circuit found that the provisions of the summary plan description controlled and that the insurance company was estopped from relying on the actual plan language.

Here, Plaintiff does not point to any conflicting language between the summary plan description and the actual plan language. Neither the plan language nor the information provided to employees is inconsistent or ambiguous. Therefore, there is no promissory estoppel issue in this instance. The Sixth Circuit has consistently held that state-law claims under the doctrine of promissory estoppel are preempted by ERISA. (*Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 696 (6th Cir.1989); *Reeher v. Baker Material Handling Corp.,* 996 F.2d 1216 (6th Cir.1993). Plaintiff's state law claims are preempted by ERISA.

### E. *Standard of Review: arbitrary and capricious or de novo.*

█ In the Sixth Circuit, in reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made. *Miller,* 925 F.2d at 986. In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court defined the standard of review when an administrator's decision to deny benefits is challenged. Application of the highly deferential arbitrary and capricious standard of review is appropriate when the benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits. *Id.* at 108–15, 109 S.Ct. at 953–956.

█ Plaintiff argues that the standard to be used is not the "arbitrary and capricious" standard but the "de novo" standard. Plaintiff claims that Defendant incorrectly relies on the Plan dated May 1993. Defendant states that the May 1993 language applies because this was the language in effect when Plaintiff filed his application. Plaintiff agrees that the May 1993 Plan does confer discretionary authority upon MetLife and if that language applied then the arbitrary and capricious standard is applicable. The Plan Text printed in April 1990 is the one relied upon by Plaintiff. Plaintiff asserts that the 1990 Plan language should apply because it was in effect on the date of Plaintiff's injury in January 1992.

Even if the April 1990 Plan was in effect, Defendant argues that the language still gave MetLife discretionary authority. Specifically, the language states: "Proof must describe the event, the nature and the extent of the cause for which a claim is made; *it must be satisfactory to us.*" (Plaintiff's Ex. 10, p. 20).

In *Miller v. Metropolitan Life Insurance Co.,* 925 F.2d 979 (6th Cir.1991), the court considered the following language contained in that plan: "on the basis of medical evidence *satisfactory to the Insurance Company.*" *Id.* at 983 (emphasis added). The Sixth Circuit in *Miller* applied the arbitrary and capricious standard. Based on the decision in *Miller, supra,* it appears that the arbitrary and capricious standard is applicable in this case. The May 1993 language should apply to Plaintiff's claim because it was the language in effect at the time Plaintiff submitted his application to MetLife in 1994. Even if the 1990 language applied, the language "satisfactory to us" is enough to give the insurance company discretion in order for the arbitrary and capricious standard to apply. The arbitrary and capricious standard applies in this instance.

### F. Whether Defendant's actions were arbitrary and capricious.

■ A court's review of a plan administrator's decision is limited to the evidence originally presented to the plan administrator. *Perry v. Simplicity Engineering*, 900 F.2d 963 (6th Cir.1990). Defendant's decision to only award Plaintiff benefits until December 31, 1993 was not arbitrary and capricious. Even though Plaintiff did not submit his claim until two years after his injury, Defendant reviewed Plaintiff's claim. Defendant had before it the opinion of an independent review board, information provided by Plaintiff regarding his medical and employment information, the Social Security administration award notice and the Michigan Workers' Compensation administrative hearing record.

Plaintiff argues that Defendant should be bound by the Social Security administration findings. Courts have found that the plan administrator is not bound by the determination of the Social Security Administration. *Kunstenaar v. Connecticut General Life Ins. Co.*, 902 F.2d 181, 184 (2d Cir.1990); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1286 (9th Cir.1990); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376 (6th Cir.1996). In *Yeager*, the Sixth Circuit reversed a district court's decision which applied a de novo standard and had taken into consideration that plaintiff had been awarded social security disability benefits. The Sixth Circuit stated that "an ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.'" 88 F.3d at 382. The Sixth Circuit placed little reliance on plaintiff's subjective complaints and concluded that; "In the absence of any definite anatomic explanation of plaintiff's symptoms, we cannot find that the administrator's decision to deny benefits was arbitrary and capricious." *Id.*

Plaintiff argues that Defendant should not have relied on the Workers' Compensation Magistrate's findings but should have relied on the Social Security Administration's findings of disability. Plaintiff's counsel claimed at oral argument that Defendant should have given greater weight to the Social Security Administration decision because the standard and factors (e.g., age, education, work experience) considered under the Act are more closely akin to the standard under the Plan than the standard or factors used in Workers' Compensation decisions. A review of the decision of the Social Security Administration reveals that it does not specifically detail the basis for its decision. (Ex. N to Defendant's brief). It appears that the Social Security Administration based its decision solely on Dr. Kim's brief report. (Ex. O to Defendant's brief). However, no hearing was held in the Social Security Administration decision where an administrative law judge made findings based upon various evidence, medical reports and Plaintiff's testimony. The Workers' Compensation Magistrate's findings were based upon a hearing where testimony was taken and various evidence, including medical reports were considered. A Magistrate in the Workers' Compensation action had the opportunity to judge the credibility of witnesses.

Plaintiff further claims that Defendant did not conduct an independent medical examination on Plaintiff but rather based its findings on medical reports. However, Plaintiff does not point to any provision in the Plan which requires Defendant to conduct an independent medical examination on Plaintiff. Under the Plan, the obligation is on the claimant to provide proof that he/she is totally disabled. (Defendant's Ex. E, p. 10).

The case cited by Plaintiff, *Pierce v. American Waterworks Co., Inc.*, 683 F.Supp. 996 (W.D.Pa.1988) is distinguishable. In *Pierce*, the court found that the plan administrator had no evidence to support its conclusion that plaintiff was not disabled. Here, Defendant relied on the findings of the Independent Medical Review Board on two occasions, the medical and employment records before it, and the decision of the Workers' Compensation Appellate Commission. The Court finds that Defendant's decision was not arbitrary nor capricious.

Accordingly,

IT IS ORDERED that Plaintiffs Motion for Summary Judgment (Docket No. 17) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED;

IT IS FURTHER ORDERED that the Complaint is DISMISSED with prejudice; and

IT IS FURTHER ORDERED that the Counterclaim in this matter filed by Defendant is also DISMISSED.