Connie M. MILLER,
Plaintiff–Appellant,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, Defendant–Appellee.

No. 90–1533.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 22, 1991.

Decided Feb. 15, 1991.

Patrick J. Brennan (argued), O'Connell, Roeser & Brennan, Pontiac, Mich., for plaintiff-appellant.

William J. Toppeta, Joseph Trovato (argued), New York City, for defendant-appellee.

Before KEITH and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant, Connie M. Miller, appeals the district court's grant of summary judgment to defendant-appellee, Metropolitan Life Insurance Co., in her suit against Metropolitan for the termination of disability benefits under a disability insurance policy issued by Metropolitan as a benefit to employees of General Motors Corp.

I.

Plaintiff began employment with General Motors in 1967. As an eligible employee, she participated in the General Motors employee welfare benefit plan (the "Plan") that provided for disability benefits. The Plan was established by General Motors pursuant to ERISA. Disability benefits were funded, in part, by Metropolitan Life Insurance Company. The Plan defined disability as follows:

> An Employe shall be deemed to be totally disabled only if that Employe is not engaged in regular employment or occupation for remuneration or profit and, on the basis of medical evidence satisfactory to the Insurance Company, the Employe is found to be wholly prevented, as a result of bodily injury or disease, either occupational or non-occupational in cause, from engaging in regular employment or occupation, for remuneration or profit, with the Employer at the location where the Employe last worked.

Under Part XII(c) of the Plan (cessation of insurance), the Plan stated:

> The Employe will be totally disabled, for the purposes of this Part XII, if, while insured under the Group Policies, the Employe becomes wholly and continuously disabled as a result of any injury or any sickness so as to be prevented thereby from performing any and every duty of the Employe's occupation, and during the period of such disability such Employe shall have been under treatment therefor by a physician legally licensed to practice medicine, subject to the following conditions:
>
> (i) Initial proof, in writing, of total disability must be submitted to the Insurance Company by or on behalf of the Employe within 3 months after the date of commencement of the total disability and at any time thereafter on demand from the Insurance Company further satisfactory proof, in writing, must be submitted to the Insurance Company that the total disability continues.
>
> (ii) Whenever proof of the Employe's total disability is submitted, the Insurance Company, at its own expense, shall have the right and opportunity to have the Employe examined by a physician designated by it.
>
> (iii) If the Employe ceases to be so totally disabled or fails to submit any required proof within the time prescribed therefor, the Employe's rights under the exception (A) specified above shall automatically and immediately cease and unless the Employe returns to active work with the Employer or meets the requirements for further continuance of such insurance under the other provisions of the Group Policies referred to in exception (C) above, the Employe's termination of employment shall be deemed to have occurred on the earlier of (a) the date of such cessation of total disability, and (b) failure to submit the required proof.

In June of 1979, plaintiff reported a psychiatric disorder, had a "breakdown" at work, and ceased coming to work. Plaintiff provided medical evidence of her total disability by her treating physician, Dr. Lawrence A. Cantow, a psychiatrist, to Metropolitan. Dr. Cantow stated that plaintiff was totally disabled for her regular occupation because of "prolonged depressive reaction." Metropolitan initiated payment of extended disability benefits under the Plan and continued payment through February 29, 1984.

After leaving her employment, plaintiff also filed a workers' compensation claim against General Motors, alleging that her psychiatric disability was work-related. This claim was settled on December 4, 1980 for $30,000.00. Plaintiff signed a voluntary quit form at the time of settlement.[1]

On September 21, 1983, Metropolitan mailed a Supplemental Statement of Claim form to plaintiff and the completed form was received by Metropolitan from plaintiff's treating physician on November 11, 1983. In his remarks on the form, dated November 3, 1983, Dr. Cantow noted that plaintiff's depressive reaction was in partial remission and that "[the p]atient is now slowly returning to employability. She has a 2 day part-time job in a stained-glass shop as a creator-aide. With more time, she will be employable."

Based on this report, defendant scheduled an examination for plaintiff with Dr. N. Murthi, a psychiatrist. Prior to the examination, defendant also contacted Dr. Cantow's office, requested updated medical information and requested that he send appropriate treatment information to Dr. Murthi. Dr. Cantow advised Metropolitan that he last treated plaintiff on November 3, 1983, that plaintiff was not on medication, and that plaintiff was neither recently hospitalized nor was she scheduled to be hospitalized.

Following his examination of plaintiff, Dr. Murthi sent Metropolitan a three page report, consisting of a two-page narrative evaluation of plaintiff in which he recommended that plaintiff "return to work on a trial basis." The report also stated that plaintiff's "bipolar affective disorder, depressed type, [was] in remission." The third page of the report consisted of an examination results form in which Dr. Murthi indicated that on the basis of his examination, plaintiff was *"not totally disabled* so as to be wholly prevented, as a result of bodily injury or disease, either occupational or non-occupational in cause, from engaging in regular employment or occupation with the General Motors Corporation at the plant or plants where [she] has or had seniority" (emphasis added).

As a result of Dr. Murthi's conclusion of no disability and the remarks by Dr. Cantow, plaintiff's extended disability benefits were discontinued by defendant effective March 1, 1984. Plaintiff was notified of the claims decision by a letter dated March 5, 1984. Metropolitan contacted General Motors that they had terminated plaintiff's benefits.

Plaintiff contacted defendant and requested reconsideration of Dr. Murthi's determination of non-disability. She asserted that she was too ill to work, stated that Dr. Cantow refused to treat her or issue more reports on her behalf because of a dispute about the payment of a bill, and requested that she be sent to a second independent examiner.

In an April 3, 1984 letter, Metropolitan notified plaintiff that in order to obtain additional benefits, it would be necessary for her to submit an additional narrative report from a physician verifying her disability. During the following months, Metropolitan personnel had numerous telephone conversations with plaintiff. In each case, she was advised that due to Dr. Murthi's determination that she was not dis-

---

**1.** Although plaintiff was no longer an employee of General Motors, her disability benefits continued. The Plan states that "if an Employe's disability leave of absence is canceled by the Employer, the Employe's employment, for the purposes of the Employe's insurance under the Group Policies, will be deemed to continue for any period during which the Employe is entitled to receive Extended Disability benefits...." (The Plan, Part XII, 1(A). Plaintiff remained eligible for extended disability benefits through June 30, 2011.

abled and could work, she must submit additional medical evidence in writing to substantiate her disability. A final letter, dated July 11, 1984, advised plaintiff that under the terms of the Plan, it was plaintiff's responsibility to provide medical evidence of continuing disability and suggested that she go to a new attending physician for a narrative report. To this date, plaintiff has failed to provide Metropolitan with any medical evidence that her disability has continued.

Plaintiff last saw Dr. Cantow on November 3, 1983. Between that date and May 1986, plaintiff did not see a physician for her alleged psychiatric disability, and since 1984, she has been employed as follows:

a) Proctor Realtors, as a Real Estate Salesperson, March, 1985 to May, 1987;

b) Pontiac School District, as a bus driver, December, 1987 to June, 1988;

c) Glysson Realty, Inc., as a Real Estate Salesperson, July, 1988 to December, 1988;

d) Kingsley Inn, as a part-time banquet server, February, 1989 to present.

In May 1986, plaintiff started seeing Dr. Michael Short, a psychiatrist. Dr. Short testified that based upon a reasonable degree of medical certainty, it was his opinion that from January 1984 through May 1986, plaintiff would not have been able to return to work at her regular occupation at General Motors. However, he stated that he could not absolutely state that plaintiff was continually disabled from March 1, 1984 through May 6, 1986.

On April 28, 1989, plaintiff filed a complaint in the Circuit Court of Oakland County, asserting a state-law breach of contract claim and violations of the Michigan Uniform Trade Practices Act. Defendant removed the case to the federal district court for the eastern district of Michigan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* After removal, a scheduling conference was held on August 15, 1989, and the district court issued a scheduling order in which the court stated that the cut-off dates for motions was March 1, 1990.

On March 1, 1990, defendant Metropolitan filed a motion to dismiss and motion for summary judgment. On March 28, 1990, plaintiff filed an answer to the defendant's motions together with a motion for leave to file a first amended complaint to add a cause of action under ERISA.

On April 5, 1990, a hearing was held before the district court. The court denied plaintiff's motion for leave to file a first amended complaint as untimely because it was filed 27 days after the cut-off date. Even though plaintiff was not given leave to amend her complaint, the court addressed the merits of plaintiff's action under ERISA. The court then granted defendant's motion to dismiss and motion for summary judgment. Plaintiff timely filed this appeal on May 4th, 1990.

II.

█ This court must first determine whether the district court erred in denying plaintiff's motion for leave to file an amended complaint. Federal Rule of Civil Procedure 15(a) states that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Decisions as to when justice requires amendment are left to the sound discretion of the trial judge, and we review those decisions under an abuse of discretion standard. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir.1986).

█ In the present case, even though the court denied plaintiff's motion to file an amended complaint stating a claim under ERISA, the court considered the merits of an ERISA cause of action in granting defendant's motion for summary judgment. The court correctly determined that plaintiff's state law causes of action related to the General Motors employee welfare benefit plan and were thus preempted by ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Plaintiff does not raise the issue of preemption on appeal, but instead attempts to characterize the district court's action as

a dismissal under Fed.R.Civ.Pro. 12(b)(6) for failure to state an ERISA claim. Rule 12(b)(6) states, "If, on a motion [for judgment on the pleadings], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." In the present case, the district court went beyond the complaint and considered the record evidence, including numerous depositions, in reaching a decision on the merits. Therefore, the district court's dismissal should be treated as the grant of a motion for summary judgment, not a dismissal for failure to state a claim under Rule 12(b)(6). We find that the district court did not abuse its discretion in denying plaintiff's motion to amend, because even though plaintiff's complaint did not state an ERISA claim, the district court considered the case on the merits under ERISA.

### III.

We must next determine whether the district court erred in granting defendant's motion for summary judgment.

### A.  Appropriate Standard of Review

■  Plaintiff asserts that "[t]he claim made by Connie M. Miller in this case is one for past due and future disability benefits and arises under 29 U.S.C. Section 1132(a)(1)(B) of ERISA." In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court defined the standard of review when an administrator's decision to deny benefits is challenged under 29 U.S.C. § 1132(a)(1)(B). The court of appeals had applied an "arbitrary and capricious" standard of review, but the Supreme Court reversed, stating:

[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

109 S.Ct. at 956. The Court held that general principles of trust law should govern the choice of a standard. Since a trustee's decisions in discharging his duties under a trust instrument are accorded deferential treatment only when the instrument itself grants the trustee discretion, the Court concluded that deference to an ERISA benefit plan administrator's decisions would be appropriate only when the benefit plan at issue granted discretion to the administrator. *Id.* at 953–56. Thus, according to *Bruch*, application of the highly deferential arbitrary and capricious standard of review is appropriate only when the benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits.

*Bruch* indicates that the threshold issue in the present case is whether Metropolitan has been given discretion under the Plan to determine eligibility for disability benefits. We believe a grant of discretion is found in the following provision of the Plan, which permits the insurance company to decide whether an applicant is "disabled," using medical evidence satisfactory to the company. The Plan states:

An Employe shall be deemed to be totally disabled only if that Employe is not engaged in regular employment or occupation for remuneration or profit and, *on the basis of medical evidence satisfactory to the Insurance Company,* the Employe is found to be wholly prevented, as a result of bodily injury or disease, either occupational or non-occupational in cause, from engaging in regular employment or occupation, for remuneration or profit, with the Employer at the location where the Employe last worked.

Part X, Section A (emphasis added).

The present case is factually similar to *Bali v. Blue Cross and Blue Shield Ass'n*, 873 F.2d 1043 (7th Cir.1989), in which the seventh circuit determined that the discretionary authority given to the Program administrator was apparent in the Program's definition of "disabled." In *Bali*, "disabled" was defined as follows:

"Disabled" means that a Participant is, determined on the basis of medical evidence satisfactory to the Committee, wholly prevented, by reason of mental or

physical disability, from engaging in any occupation comparable to that in which he was engaged for the Employer, at the time his disability occurred.

*Id.* at 1047. This definition of disability is similar to the definition in the present case as both definitions of disability state that disability is determined *on the basis of medical evidence satisfactory to the insurer.* The court in *Bali* concluded:

> While this provision does not give the [insurer] complete discretion with respect to the ultimate determination of disability, it does grant discretion as to what sort of evidence may be required from an applicant to provide a basis for the subsequent disability determination. And while the [insurer's] discretion does not extend to making "unreasonable" requests, ... any reasonable requests for documentation are within its discretion under the Program provisions.

*Id.* (footnote omitted). In the present case, the insurer—defendant Metropolitan—was granted similar discretion under the Plan to make reasonable requests for documentation and to determine what evidence may be required to provide a basis for a disability determination.

Because the express provisions of the Plan grant Metropolitan the discretionary authority described by the Supreme Court in *Bruch*,[2] the district court correctly applied an "arbitrary and capricious" standard when reviewing Metropolitan's termination of benefits.

### B. Termination of Benefits.

■ This court must next decide whether the district court erred in determining on a motion for summary judgment that Metropolitan did not act arbitrarily and capriciously in terminating plaintiff's disability benefits.

This court has stated that an ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988). However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor [ ] in determining whether there is an abuse of discretion.'" *Bruch*, 109 S.Ct. at 956–57 (citation omitted). The eleventh circuit, in *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1561 (11th Cir.1990), has pointed out the difficulty of integrating factors such as self-interest into the legal standard for review where an insurance company serves as the decisionmaking fiduciary for benefits that are paid out of the insurance company's assets rather than out of the assets of the employee benefit plan. Because an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business, and the conflict of interest is substantial. *Id.* at 1561–62. The court in *Brown* held that the abuse of discretion or arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstances of the inherent conflict of interest. *Id.* at 1563.

In addition to this consideration, this court is reviewing the district court's grant of summary judgment. In reviewing the grant of a summary judgment, the judgment will be affirmed if the reviewing court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In the present case, this court must determine if there is any genuine issue of material fact whether the insurance company's decision to deny benefits was arbitrary or capricious. *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 694 (6th

---

**2.** Two sixth circuit cases have interpreted *Bruch* to require remand to the district court for *de novo* review because of the absence of a "clear grant of discretion to the plan administrator." *Brown v. Ampco—Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir.1989); *Perry v. Simplicity Engineering*, 900 F.2d 963, 965 (6th Cir.1990). However, the present case is distinguishable as there is a clear grant of discretion to the insurance company.

Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990).

After a careful examination of the record, we conclude that Metropolitan's decision to terminate benefits was reasonable in light of the Plan's provisions even after the insurance company's conflict of interest is considered. The Plan states that at any time after the initial proof of disability, the insurance company may demand further satisfactory proof, in writing, that the total disability continues. Part XII, 1(C)(i). It was therefore not unreasonable for Metropolitan to mail a Supplemental Statement of Claim form to plaintiff on September 21, 1983, requiring continuing evidence of her disability. Upon receiving the form from plaintiff's treating physician, Dr. Cantow, who stated that plaintiff's prolonged depressive reaction was in partial remission and that patient was slowly returning to employability, it was not arbitrary and capricious under the terms of the Plan for Metropolitan to request that an independent examination by one of its designated physicians be made. The Plan states that "[w]henever proof of Employe's total disability is submitted, the Insurance Co., at its own expense, shall have the right and opportunity to have the Employe examined by a physician designated by it." Part XII, 1(C)(ii). Defendant Metropolitan designated Dr. Murthi to conduct the examination, and he reported to defendant that, in his opinion, plaintiff was "not totally disabled so as to be wholly prevented, as a result of bodily injury or disease … from engaging in regular employment or occupation with the General Motors Corp. at the plant or plants where he [or she] has or had seniority." [3]

After receiving this report, it was not arbitrary and capricious for Metropolitan to terminate benefits. *Roberson v. General Motors Corp.,* 801 F.2d 176, 179–80 (6th Cir.1986) (board acted properly in accepting the impartial medical examiner's determination of disability even though plaintiff claimed that an additional medical examination was warranted); *see also Taylor v. General Motors Corp.,* 826 F.2d 452, 455 (6th Cir.1987) (plaintiff has no claim of disabling emotional condition against Metropolitan because plaintiff was not under the care of a legally licensed physician). [4]

Plaintiff makes much of the fact that in the narrative portion of his report, Dr. Murthi stated that he recommended a return to work *on a trial basis.* Plaintiff implies that once disability benefits are conferred, the burden of proof lies with the insurance company to prove that the employee can return to her former regular employment. However, under the terms of the Plan, it is the employee who must continue to supply on demand proof of continuing disability to the satisfaction of the insurance company. Even though Dr. Murthi recommended work only on a trial basis, we do not believe Metropolitan's action in terminating benefits was inconsistent with the scheme as set forth in the Plan. Plaintiff refused to return to General Motors on a trial basis. Rather than countering Dr. Murthi's determination that she was not disabled with evidence from her treating physician, which Metropolitan encouraged her to do, plaintiff requested a second independent examination. However, under the terms of the Plan, the insurance company need not request an independent examination by one of its physicians unless the employee first submits proof of continuing disability. The Plan's terms specify that provision of reasonably requested information is a condition precedent to the receipt

---

**3.** Although plaintiff states that Dr. Murthi's report did not certify that plaintiff was able to *engage in regular employment with General Motors at the last location where she had worked,* this is not true. In her brief, plaintiff continually ignores p. 3 of Dr. Murthi's report in which this statement is made. For this reason, we believe plaintiff's argument that the district court and claims examiner were operating under an erroneous definition of disability is frivolous.

**4.** In the present case, plaintiff was not under the care of a legally licensed physician for a psychiatric disorder from November 1983 to 1986. Therefore, after November 3, 1983, plaintiff would no longer have qualified for benefits under the Plan even if defendant had not terminated benefits. Part XII(C) of the Plan states that in order to receive benefits, an employe must be "under treatment … by a physician legally licensed to practice medicine."

of benefits and permit the company to require examinations and evidence at any point to demonstrate disability. Therefore, Metropolitan did not act unreasonably in refusing to reinstate benefits or schedule a second independent examination unless plaintiff first submitted further evidence of continuing disability. We find that Metropolitan's actions in terminating plaintiff's disability benefits are consistent with a fair reading of the discretionary authority granted to the insurance company under the Plan and affirm the decision of the district court to grant Metropolitan summary judgment on this issue.

## IV.

■ Plaintiff finally argues that the district court should not have considered plaintiff's failure to submit additional documentation of her disability in its decision to grant summary judgment to defendant. Plaintiff maintains that the district court could correctly consider only the evidence before Metropolitan at the time of its termination of benefits, which consisted of Dr. Murthi's report alone.

It is true that when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made. This limitation applies to both an "arbitrary and capricious" or a *de novo* standard of review. *Crews v. Central States, Southeast and Southwest Areas Pension Fund*, 788 F.2d 332, 336 (6th Cir. 1986) (applying the principle to the "arbitrary and capricious" standard of review); *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990) (applying the principle to the *de novo* standard of review).

However, plaintiff misconstrues the extent of this limitation. In reviewing a *final* decision, this court must consider what occurred during the administrative appeals process.[5] The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court. "Every

employee benefit plan shall ... afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825–26 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1227 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986).

In the present case, it is thus necessary to determine whether Metropolitan acted rationally in light of the Plan's provisions in continuing to deny benefits after plaintiff requested reconsideration of Dr. Murthi's determination of non-disability, alleging that Dr. Murthi examined her for only seven minutes and that her treating physician would no longer see or issue reports for her. Metropolitan's response to these allegations and plaintiff's request for reconsideration are relevant to the issue of whether Metropolitan acted properly in finally denying plaintiff's claim.

■ For these reasons, the district court correctly considered plaintiff's failure to supply the documentation requested by Metropolitan subsequent to the initial termination of benefits. It was not arbitrary and capricious for Metropolitan to continue to deny benefits even though plaintiff maintained that she was still disabled and requested a second independent examination because plaintiff refused to comply with the procedures set forth in the Plan and failed to provide continuing medical documentation of her disability. It is not difficult to understand why plaintiff failed to provide the documentation requested because she no longer was under the care of a psychiatrist. This failure on the part of plaintiff thwarted the administrative appeals process and justified Metropolitan's final denial of disability benefits after plaintiff's request for reconsideration. *See Bali*, 873 F.2d at 1048 (after requesting

---

5. The testimony of Dr. Short, plaintiff's present treating physician, on the other hand, was not part of the administrative appeals process or the record below, and therefore may not be considered by this court under *Crews* and *Perry*.

reconsideration, defendant consistently refused to give the insurer the "objective" test results it had the discretion to seek; insurer, therefore, did not act arbitrarily or capriciously in finally denying benefits.)

### V.

For the foregoing reasons, the decision of the district court granting defendant's motion for summary judgment is hereby AFFIRMED.