89 F.3d 835
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lonnie TOLLEY, Plaintiff-Appellant,
v.
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and Nuclear
Fuel Services, Inc., Defendants-Appellees.
 No. 95-5840.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1996.
 
 Before: MERRITT, Chief Circuit Judge; JONES and SUHRHEINRICH, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Plaintiff, Lonnie Tolley, appeals the District Court's grant of summary judgment to defendants, Provident Life and Accident Insurance Company and Nuclear Fuel Services, Inc., who terminated Mr. Tolley's disability benefits pursuant to his employer's benefits plan. Because the District Court properly reviewed the plan administrator's actions under the "arbitrary and capricious" standard, and because the plan administrator's actions were reasonable, we AFFIRM.
 
 I.
 
 2
 Plaintiff, Mr. Tolley, was employed by Nuclear Fuels Services, Inc. in Erwin, Tennessee as a production operator for twenty-three years. After several bouts of minor back trouble, he injured his spine while lifting a tank at work on February 28, 1989. In August 1989, he underwent surgery and has not returned to work, either at Nuclear Fuels or anywhere else.
 
 
 3
 The company's benefit plan provides long-term disability benefits for the first three years after an injury if the employee cannot return to his previous position. Provident paid the benefits from November 1989 through December 31, 1993. After the first three years, however, the plan provides that benefits will continue only if the employee is "not able to do each of the material duties of any job for gain or profit for which [he is] reasonably fitted by education, training, or experience." J.A. at 26 (emphasis added).
 
 
 4
 In July 1993, Mr. Tolley was examined by Dr. Peavyhouse, an independent medical examiner, at the request of the company. The doctor stated that he saw "no evidence of specific orthopedic impairment" in Mr. Tolley and that he could "perform any function that he wants to perform, and that could include bending and lifting within normal limits." J.A. at 262. Mr. Tolley's treating physician since the accident, Dr. Johnson, stated in a letter that he disagreed with Dr. Peavyhouse's conclusions and concluded that Tolley could not return to work unless it was "very light work." Specifically, he could lift 20 pounds occasionally and ten pounds frequently. J.A. at 257. Dr. Johnson did see improvement in Mr. Tolley, however, noting in May 1993 that Tolley felt "pretty good," was "going better," and his range of motion had increased. J.A. at 260.
 
 
 5
 Mr. Tolley had hired a vocational expert, Norman Hankins, in August 1990, to assess his employability after the accident. At that time, Mr. Hankins concluded that "from a practical standpoint, Mr. Tolley's vocational disability closely approaches 100%." J.A. at 228. In December 1993, Provident hired Mr. Hankins to do another vocational assessment, this time from the record rather than from an examination of the plaintiff. Mr. Hankins apparently relied upon the reports of the two doctors, Johnson and Peavyhouse, and his own earlier evaluation of Tolley. J.A. at 230-31. Mr. Hankins concluded from the medical evidence that "Mr. Tolley retains the capacity for light work" and determined from his own study of the labor market that approximately 8,000 suitable jobs existed in the area. Specifically, Mr. Hankins noted that Mr. Tolley could work as a nightwatchman and perform a variety of jobs involving hand-assembly of parts.
 
 II.
 
 6
 Plaintiff claims that the District Court erred in reviewing the plan administrator's denial of benefits under the "arbitrary and capricious" standard. In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the Supreme Court held that a denial of benefits challenged under ERISA is to be reviewed under a de novo standard unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility benefits or to construe the terms of the plan." Where the plan administrator retains such discretionary authority, his actions may be reviewed under the "arbitrary and capricious" standard. Id. This court has held that a plan that requires an applicant to prove disability "using medical evidence satisfactory to [the company]" reserves sufficient discretionary authority to the administrator that the arbitrary and capricious standard is appropriate. Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983-84 (6th Cir.1991). Because the plan at issue here requires that an applicant provide "satisfactory proof" of his or her disability, J.A. at 62, the District Court was correct in reviewing the denial of benefits under the "arbitrary and capricious" standard. Whatever standard we use in this case--whether "arbitrary and capricious" or "de novo"--the result must be the same in the case because even Mr. Tolley's treating physician has concluded that Tolley is not disabled from doing light work.
 
 
 7
 The evidence before the plan administrator consisted of the medical records of Mr. Tolley's treating physician, Dr. Johnson, spanning from August 1990 to September 1993; a report by Dr. Peavyhouse after he examined the patient in July 1993; and the two reports by Mr. Hankins, one commissioned by Mr. Tolley in 1990 and the second commissioned by the company in December 1993. Plaintiff contends that the report by Dr. Peavyhouse and the second report by Mr. Hankins--both of which suggest that Mr. Tolley is employable--can be discounted. First, he contends that the report by Dr. Peavyhouse was overly optimistic in assessing his physical capabilities and that this could have mislead Mr. Hankins in preparing his second report. He notes Dr. Johnson's disagreement with Dr. Peavyhouse's assessment. Mr. Tolley also suggests that the 8,000 suitable jobs cited in Mr. Hankins' second report were not enough to remove him from the category of "totally disabled" as defined in the plan. Finally, plaintiff seems to imply that the Peavyhouse report and the second Hankins report are suspect because they were "procured by the insurance company." Plaintiff's Brief at 8.
 
 
 8
 Plaintiff's reading of the evidence, however, is selective and ultimately unpersuasive. Dr. Johnson's notes in May 1993 acknowledge that Mr. Tolley's movement had improved and that he was feeling better. Moreover, both doctors noted a strong psychological/emotional component to plaintiff's limitations. Disability due to mental and emotional problems is not covered in the plan beyond a two-year period. J.A. at 32. In short, the medical evidence revealed that Mr. Tolley could engage in light work, and the vocational evidence showed that such light work existed in Mr. Tolley's area. For that reason, the plan administrator's termination of benefits on the basis that Mr. Tolley was not totally disabled as defined in the plan was not arbitrary and capricious. We, therefore, affirm the grant of summary judgment by the District Court.