**Raymond COCHRAN, Conservator of Regina Elizabeth Hunter, a Protected Person, Plaintiff–Appellant,**

v.

**TRANS–GENERAL LIFE INSURANCE COMPANY, a Pennsylvania Corporation, Defendant–Appellee.**

Nos. 99–2102, 99–2447.

United States Court of Appeals, Sixth Circuit.

April 13, 2001.

■

Before NORRIS, SILER, and BRIGHT, Circuit Judges.*

## OPINION

NORRIS, Circuit Judge.

Raymond Cochran, as conservator of Regina Hunter (Hunter), brought suit under § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), after the defendant, Trans–General Life Insurance Company (Trans–General), terminated Hunter's long-term disability benefits. The district court affirmed the decision of the plan administrator to terminate benefits, denied Hunter's motion for reconsideration and imposed sanctions on Hunter's counsel under 28 U.S.C. § 1927. Hunter now appeals on the grounds that the district court applied the wrong standard of review to the plan administrator's decision, erroneously found that Hunter suffered from a mental disability, and abused its discretion by ordering counsel to pay Trans–General's reasonable attorneys' fees and costs under 28 U.S.C. § 1927. For the reasons set out below we AFFIRM the

decision of the district court in part and REVERSE in part.

## I.

Beginning in July 1989, Hunter worked as the director of consultation, education and prevention at the Detroit East Community Mental Health Center (Health Center). As an employee of the Health Center, Hunter became the beneficiary of a long-term disability policy (Plan) purchased by her employer from Group America Insurance Company (later known as Trans–General).[1] The Plan was created and operated pursuant to ERISA. The relevant portions of the Plan provided that long-term disability benefits would be paid for 24 months, but that payment beyond this period would be conditioned upon the claimant's being disabled from all occupations. Further, long-term benefits for a disability caused, or contributed to, by a mental disorder, were only payable for 24 months.

On May 6, 1990, Hunter was involved in a four-car chain reaction collision. As a result of this accident Hunter suffered from a closed head injury, post-concussion syndrome and associated neuropsychological difficulties. Unable to return to her previous job, Hunter received disability benefits from Trans–General from November 7, 1990 to November 7, 1992. In January 1992, Trans–General informed Hunter that her eligibility to receive benefits past November 7, 1992, was contingent upon her being disabled from all occupations. Following a report from Hunter's primary care physician, which indicated that Hunter could perform light work, Trans–General requested an independent medical examination. A neurologist con-

---

* The Honorable Myron Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Trans–General changed its name to Highmark Life Insurance Company on April 1, 1999.

ducted the exam in July 1992, and reported that Hunter's "neurologic examination was normal" and that there was no need for restrictions or limitations to be placed on Hunter. Following this report, Trans–General informed Hunter that her benefits would be discontinued on November 6, 1992, as she had not shown that she was disabled from all occupations.

On December 10, 1992, Hunter replied to this letter by asking that Trans–General consider further information submitted by another one of her doctors. Trans–General considered the report and, on February 16, 1993, informed Hunter that it would not alter its decision to terminate benefits. After an interval of almost five years, Hunter re-applied for benefits in 1997. Trans–General considered Hunter's letter an appeal from the denial of benefits in 1992, and rejected it as untimely.

Hunter then brought an action in the Michigan courts, alleging breach of contract and violation of § 1132(a)(1)(B) of ERISA. Following removal to federal court, Trans–General filed a motion for summary judgment; the district court, construing the motion as one for entry of judgment affirming the plan administrator's decision, granted it on July 30, 1999.[2] The district court concluded that the plan administrator's decision to deny continued benefits had been neither arbitrary nor capricious and, alternatively, that the plan administrator would also have been entitled to terminate Hunter's benefits because of the Plan's 24–month limit on benefits for disabilities caused by a mental disorder.

Following this decision, Hunter filed a motion for reconsideration, asserting that the district court had erred when it stated that she claimed to suffer from a mental

disability and had improperly failed to consider outside evidence unavailable to the plan administrator. Trans–General filed a responsive motion seeking sanctions against Hunter under 28 U.S.C. § 1927. The district court rejected Hunter's arguments and imposed sanctions on the grounds that Hunter's filing of a motion for reconsideration contesting the district court's alternative finding that Hunter suffered from a mental disability amounted to a vexatious multiplication of the proceedings. Following submissions regarding the costs and fees incurred by Trans–General, the district court ordered Hunter's counsel to pay Trans–General $538.13 in costs and $3,192.25 in attorneys' fees.

## II.

█ We review the district court's judgment de novo. *See Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 613 (6th Cir.1998). In this case Hunter argues that when an insurance company both funds and administers benefits a structural conflict of interest exists that makes application of the arbitrary and capricious standard of review erroneous.

█ District courts generally review ERISA challenges to denials of benefits under a de novo standard. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, if the plan grants the plan administrator discretion to determine eligibility for benefits, courts review those determinations under the arbitrary or capricious standard of review. *See Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1071 (6th Cir.1994). In this case, the parties agree that the plan administrator had discretion to determine Hunter's continued

---

2. The district court found, and neither party contests, that Hunter's state law contract claims were preempted by ERISA.

eligibility for benefits; the plan administrator's decision is therefore reviewed under the arbitrary and capricious standard. "The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Ret. Plan,* 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)).

█ Contrary to Hunter's assertion, the existence of a conflict of interest shapes application of, but does not change, the arbitrary and capricious standard of review. This court has noted that:

> Because an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business, and the conflict of interest is substantial. The court in *Brown* held that the abuse of discretion or arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstances of the inherent conflict of interest.

*Miller v. Metro. Life Ins. Co.,* 925 F.2d 979, 984 (6th Cir.1991) (citing *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556, 1561–63 (11th Cir.1990)) (internal citations omitted); *see also Firestone,* 489 U.S. at 115, 109 S.Ct. 948 (1989) ("Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion.") (internal quotation and citations omitted).

However, mere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits. *See Peruzzi v. Summa Med. Plan,* 137 F.3d 431, 433 (6th Cir.1998) ("Because our review of the record reveals no significant evidence that SummaCare based its determination on the costs associated with Mrs. Peruzzi's treatment ... we cannot conclude that SummaCare was motivated by self-interest in this instance"); *see also Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan,* 144 F.3d 1014, 1020 (7th Cir. 1998) ("We presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict"); *Sullivan v. LTV Aerospace & Def. Co.,* 82 F.3d 1251, 1259 (2d Cir.1996) ("[A] reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists, ... but that the conflict affected the reasonableness of the Committee's decision") (internal quotation and citations omitted).

█ Here, the district court properly found that while the presence of a conflict of interest is a factor to be considered when reviewing a plan administrator's decisions, some evidence must be produced indicating how the alleged conflict affected the administrator's denial of the claimant's benefits. Hunter points to no evidence indicating that the plan administrator's decision to deny her continued benefits was influenced by the alleged structural conflict of interest. In the absence of such evidence, the district court correctly concluded that the decision of the plan administrator to deny Hunter continued benefits was a reasonable one based on the evidence before the administrator. We therefore affirm the district court's decision finding that Trans–General's decision to terminate Hunter's benefits was neither arbitrary nor capricious.

### III.

This court reviews a district court's decision to impose sanctions under 28 U.S.C. § 1927 for an abuse of discretion. *See Ridder v. City of Springfield,* 109 F.3d 288, 298 (6th Cir.1997). Section 1927 provides that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In considering whether or not to impose sanctions, this court has cautioned that

simple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927. There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.

*In Re Ruben,* 825 F.2d 977, 984 (6th Cir. 1987). In this case, we believe that the district court abused its discretion when it imposed sanctions upon Hunter's counsel.

The district court's decision to impose sanctions under 28 U.S.C. § 1927 centered on Hunter's motion for reconsideration in which Hunter contested the district court's alternative finding that she was not entitled to benefits because she was suffering from a mental disability. However, Trans–General had not raised the question of Hunter's alleged mental disability in its letter denying continued benefits, and the issue formed no part of the administrative record. A district court's review of a plan administrator's decision is limited to the evidence before the plan administrator at the time of the denial of benefits. *See Miller,* 925 F.2d at 986 ("when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made"). The district court thus should not have reached the question of whether Hunter suffered from a mental disability, and Hunter's decision to contest the court's decision to do so was not inappropriate or frivolous.

### IV.

The decision of the district court, that Trans–General's decision to deny Hunter continued benefits was neither arbitrary nor capricious is AFFIRMED, while its decision to impose sanctions under 28 U.S.C. § 1927 is REVERSED.